**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICAH UETRICHT, and JOHN KADERBEK, | |
| Plaintiffs, | Case No. 1:21-cv-03364 |
| v. | Hon. Matthew F. Kennelly |
| CHICAGO PARKING METERS, LLC, | Mag. Judge Gabriel A. Fuentes |
| Defendant. | |

**<u>CHICAGO PARKING METERS, LLC'S REPLY IN SUPPORT OF
RULE 12(B)(1) AND RULE 12(B)(6) MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

**Page**

I.     Plaintiffs Lack Article III Standing...................................................................... 2

     A.    Plaintiffs do not plead injury that is concrete, particularized, and imminent. ........ 2

     B.    Plaintiffs' claimed injuries are not fairly traceable to CPM. ................................. 4

     C.    Plaintiffs do not plead redressability........................................................ 5

II.    Plaintiffs Have Not Alleged an Antitrust Injury ................................................ 6

III.   Plaintiffs' Sherman Act Claims Are Barred by the State Action Immunity Doctrine........ 7

IV.   Plaintiffs Fail to Plead Required Elements of Sherman Act Claims ................................. 8

V.    Plaintiffs Fail to Plead Required Elements of an ICFA Claim ........................................ 10

VI.   Plaintiffs' Claims Are Untimely and Should Be Dismissed Based on Laches................ 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*,
    129 F. Supp. 3d 614 (N.D. Ill. 2015) .............................................................7, 14, 15

*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*,
    326 F. Supp. 3d 602 (N.D. Ill. 2018) .................................................................1, 8

*Alarm Detection Sys. v. Bloomingdale Fire Prot. Dist.*,
    No. 14-cv-876, 2014 WL 2177272 (N.D. Ill. May 16, 2014)................................15

*Area Transp. v. Ettinger*,
    219 F.3d 671 (7th Cir. 2000) ................................................................................5

*Ariz. Christian Sch. Tuition Org. v. Winn*,
    131 S. Ct. 1436 (2011)........................................................................................5

*Ass'n of Am. Physicians & Surgeons v. Koskinen*,
    2014 WL 1056495 (E.D. Wis. Mar. 18, 2014) .....................................................5

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*,
    909 F. Supp. 162 (S.D.N.Y. 1995) ......................................................................9

*Batson v. Live Nation Entm't, Inc.*,
    746 F.3d 827 (7th Cir. 2014) ...................................................................1, 11, 12

*Bloom v. Hennepin Cty.*,
    783 F. Supp. 418 (D. Minn. 1992)........................................................................8

*Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*,
    445 U.S. 97 (1980)...............................................................................................7

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ..............................................................................12

*Cannon v. Univ. of Health Scis./The Chi. Med. Sch.*,
    710 F.2d 351 (7th Cir. 1983) ..............................................................................14

*Centerline Equipment Corporation v. Banner Personnel Service*,
    545 F. Supp. 2d 768 (N.D. Ill. 2008) ..................................................................12

*Chattanoga Mfg., Inc. v. Nike, Inc.*,
    301 F.3d 789 (7th Cir. 2002) ..............................................................................14

*Chi. Prof'l Sports Ltd. P'Ship v. Nat'l Basketball Ass'n*,
  961 F.2d 667 (7th Cir. 1992) .......................................................................6

*City Commc'ns, Inc. v. Detroit*,
  660 F. Supp. 932 (E.D. Mich. 1987).............................................................8

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)..................................................................................3, 5

*Common Cause Ind. v. Lawson*,
  937 F.3d 944 (7th Cir. 2019) ...................................................................3, 4

*Dunnet Bay Constr. Co. v. Borggren*,
  799 F.3d 676 (7th Cir. 2015) .......................................................................4

*E&L Consulting, Ltd. v. Doman Indust. Ltd.*,
  472 F.3d 23 (2d Cir. 2006)...........................................................................9

*F.T.C. v. Thomas Jefferson Univ.*
  505 F. Supp. 3d 522 (E.D. Pa. 2020) .........................................................10

*F.T.C. v. Whole Foods Market, Inc.*,
  548 F.3d 1028 (D.C. Cir.) ..........................................................................10

*Fair Elections Ohio v. Husted*,
  770 F.3d 456 (6th Cir. 2014) .......................................................................3

*G.M. Sign Inc. v. Stergo*,
  681 F. Supp. 2d 929 (N.D. Ill. 2009) .........................................................12

*Gilbert's Ethan Allen Gallery v. Ethan Allen, Inc.*,
  204 Ill. Dec. 769, 642 N.E.2d 470 (1994)..................................................11

*Gill v. Whitford*,
  138 S. Ct. 1916 (2008)..................................................................................4

*Goldhamer v. Nagode*,
  21 F.3d 581 (7th Cir. 2010) .........................................................................3

*Gov't of Puerto Rico v. Carpenter Co.*,
  442 F. Supp. 3d 464 (D.P.R. 2020).............................................................15

*Humboldt Bay Mun. Water Dist. v. Louisiana-Pacific Corp.*,
  608 F. Supp. 562 (N.D. Cal. 1985) ..........................................................1, 8

*Indep. Voters of Ill. Indep. Precinct Org. v. Ahmad*,
  2014 IL App (1st) 123629, 13 N.E.3d 251 (1st Div. 2014).............1, 11, 14

*JetAway Aviation, LLC v. Bd. of Cty. Com'rs of Cty. Of Montrose, Colo.*,
754 F.3d 824 (10th Cir. 2014) ........................................................................7

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) .......................................................................12

*Lathrop v. Juneau & Assocs.*,
220 F.R.D. 330 (S.D. Ill. 2004) ....................................................................7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).................................................................................2, 5

*Massachusetts v. EPA*,
549 U.S. 497 (2007).....................................................................................3

*McIntosh v. Walgreens Boots Alliance, Inc.*,
2019 IL 123626, 135 N.E.3d 73 (2019)..................................................12, 13

*Medina v. Public Storage, Inc.*,
2014 WL 1715517 (N.D. Ill. April 30, 2014) .............................................1, 11

*Messina v. Green Tree Service, LLC*,
210 F. Supp. 3d 992 (N.D. Ill. 2016) ...........................................................12

*New York v. Facebook*,
No. CV 20-3589 (JEB), 2021 WL 2643724 (D.D.C. June 28, 2021)....................15

*Oliveira v. Amoco Oil Co.*,
201 Ill. 2d 134, 776 N.E.2d 151 (2002) ........................................................12

*Perry v. Village of Arlington Heights*,
186 F.3d 826 (7th Cir. 1999) .......................................................................4

*Robinson v. Toyota Motor Credit Corp.*
201 Ill. 2d 403, 775 N.E.2d 951 (2002) ....................................................11, 12

*Shuffle Tech Int'l, LLC v. Sci. Games Corp.*,
No. 15 C 3702, 2015 WL 5934834 (N.D. Ill. Oct. 12, 2015) ...............................14

*Siegel v. Shell Oil Co.*,
612 F.3d 932 (7th Cir. 2010) ...................................................................11, 12

*Spokeo v. Robins*,
578 U.S. 330 (2016)......................................................................................3

*Stanton v. Ash*,
384 F. Supp. 625 (S.D. Ind. 1974) .................................................................1

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ....................................................................................3, 4

*U.S. Awami League, Inc. v. City of Chi.*,
    110 F. Supp. 3d 887 (N.D. Ill. 2015) ....................................................................1

*Wilmes v. U.S. Postal Serv.*,
    810 F.2d 130 (7th Cir. 1987) ...............................................................................13

*Zimomra v. Alamo Rent-A-Car*,
    111 F.3d 1495 (10th Cir. 1997) .............................................................................8

*In re Zinc Antitrust Litig.*,
    155 F. Supp. 3d 337 (S.D.N.Y. 2016) ...................................................................6

**Statutes**

65 ILCS 5/1-1-10 ....................................................................................................7, 10

65 ILCS 5/11-71-1 .............................................................................................7, 10, 11

815 ILCS 505/1 *et seq.* ......................................................................................1, 2, 10

815 ILCS 505/10a .......................................................................................................13

15 U.S.C. § 1 ..........................................................................................................8, 9, 15

15 U.S.C. § 2 ...............................................................................................................1, 8

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ................................................................................................3

Fed. R. Civ. P. 12(b)(6) ................................................................................................3

Plaintiffs' Opposition fails to rebut the arguments raised in CPM's motion to dismiss and confirms that the Amended Complaint should be dismissed with prejudice.

The Opposition repeats Plaintiffs' criticisms of the Concession and their dissatisfaction that the City of Chicago has not phased out meter parking, so as to limit what Plaintiffs call "auto dependency." Plaintiffs argue that this phasing-out has not happened because the Concession illegally blocks the City from "active regulation" of the meter system. That mischaracterization of the Concession is littered throughout the Opposition and forms the bedrock of the Amended Complaint. But far from demonstrating that Plaintiffs have pled Sherman Act or ICFA claims, it is an irrelevant rehash of the claim previously made by Plaintiffs' counsel in *Ahmad* that the Concession is unauthorized under Illinois state law. The Illinois Court of Appeals rejected counsels' claim seven years ago.[1]

The Opposition also ignores most of the cases cited by CPM that dismiss claims similar to Plaintiffs'. By way of limited example, Plaintiffs fail to engage with *U.S. Awami League, Inc. v. City of Chi.*, 110 F. Supp. 3d 887 (N.D. Ill. 2015), or *Stanton v. Ash*, 384 F. Supp. 625 (S.D. Ind. 1974), which dismissed citizen complaints about government initiatives for lack of Article III standing. Plaintiffs do not engage with *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 326 F. Supp. 3d 602 (N.D. Ill. 2018), which applied state action immunity to dismiss Sherman Act claims concerning an exclusive contract between a municipal government entity and a private company, as here. Plaintiffs ignore *Humboldt Bay Mun. Water Dist. v. Louisiana-Pacific Corp.*, 608 F. Supp. 562 (N.D. Cal. 1985), which dismissed a Sherman Act § 2 claim for lack of monopoly power where, as here, the defendants had no power to control price. And Plaintiffs do not address *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827 (7th Cir. 2014), or *Medina v. Public Storage,*

---

[1] *Indep. Voters of Ill. Indep. Precinct Org. v. Ahmad*, 2014 IL App (1st) 123629, 13 N.E.3d 251 (1st Div. 2014).

*Inc.*, No. 12 C 00170, 2014 WL 1715517 (N.D. Ill. April 30, 2014)—cases dismissing an ICFA claim based on alleged "unfair practices" because, as here, the plaintiffs failed to plead violations of public policy and had alternatives to using the allegedly unfair product or service.

Unable to distinguish the extensive body of authority requiring dismissal of their claims, Plaintiffs distract and detour with embellishments of their allegations and irrelevant arguments that the Concession is a bad deal financially for the City or that the City's transportation infrastructure compares unfavorably to other cities. None of that matters. Plaintiffs do not have standing to use this Court as a vehicle to advance their personal disagreement with the Concession or the policies of City government, and their speculative and thinly pled allegations do not, in any event, plead that the Concession and CPM violate the Sherman Act or the ICFA.

I.      **Plaintiffs Lack Article III Standing**

Plaintiffs only selectively respond to CPM's arguments that they fail to plead standing. They primarily cite *Midcal* and *Parker*—state action immunity cases that are irrelevant to this issue. Plaintiffs' failure to engage CPM's arguments confirms their inability to meet their burden to plead any of the three Article III requirements: (i) an injury in fact (ii) that is traceable to the challenged conduct and (iii) that is likely to be redressed by a decision in their favor. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

A.      **Plaintiffs do not plead injury that is concrete, particularized, and imminent.**

The Opposition identifies three alleged injuries that Plaintiffs claim constitute injury in fact: (1) payment of increased meter rates as compared to 2008, when the Concession was executed; (2) lack of active regulation of the meter system by the City; and (3) long-term harm from locking in auto dependency. Opp'n at 5-7.[2] Only one of those—increased rates—is even

_____

[2] Plaintiffs' Memorandum of Law in Opposition to Defendant CPM's Motion to Dismiss is referred to herein as "the Opposition" and cited "Opp'n"; Defendant's Memorandum in Support of Chicago Parking

conceivably "concrete." The other two are "hypothetical or abstract disputes" that "federal courts do not adjudicate." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Plaintiffs allege "[h]arm to abstract social interests," which "cannot confer Article III standing." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014); *see also Common Cause Ind. v. Lawson*, 937 F.3d 944, 956 (7th Cir. 2019) ("An abstract disagreement, of course, is not an Article III injury.").

Plaintiffs' reliance on *Massachusetts v. EPA*, 549 U.S. 497 (2007), is misplaced because (a) the Court's analysis turned on the fact "that the party seeking review" was "a sovereign State [Massachusetts]" advancing its unique interest "to the preservation of its sovereign territory," "and not … a private individual," and (b) a federal statute provided a procedural right of action to pursue the allegedly unlawfully withheld regulatory action in that case. *Id*. at 518. Plaintiffs' reliance on *Spokeo v. Robins*, 578 U.S. 330 (2016), is similarly flawed. The Court's discussion of whether alleged intangible harms like dissemination of false information about the plaintiff can in some circumstances satisfy Article III, if sufficiently concrete (*id*. at 338-43), did not endorse standing for anything like the abstract, public-policy disagreements alleged by Plaintiffs.

As for increased meter fees, the Opposition ignores two points: (i) Plaintiffs must plead concrete injury *in relation to the relief they seek*, which is an injunction imposing more regulation of the meter system, not damages; and (ii) for injunctive relief, an allegedly concrete injury must be "*certainly impending*" in the "imminent" future, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); past payments of fees since 2008 cannot suffice. *Goldhamer v. Nagode*, 621 F.3d 581, 585-86 (7th Cir. 2010). Those points are fatal to Plaintiffs' reliance on increased meter fees, as

---

Meters, LLC's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss is referred to herein as "CPM's Motion to Dismiss" and cited "CPM Mem." All abbreviations are the same as used in CPM's Motion to Dismiss. Unless otherwise noted, emphasis has been added and internal citations omitted.

they do not seek any relief that would preclude their future payment of meter fees at the rate they complain of. *See* Am. Compl. ¶ 66.

Plaintiffs' alleged injuries also are not "particularized." Nothing in the Opposition shows those supposed issues "affect [them] in an individual way." *Common Cause Ind. v. Lawson*, 937 F.3d 944, 956 (7th Cir. 2019). Rather, they are "shared in substantially equal measure by all or a large class of citizens," *Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 689 (7th Cir. 2015)—anyone living, working, or traveling in Chicago. For that reason, too, Plaintiffs fall short of the injury-in-fact requirements promulgated by the Supreme Court, which has repeatedly cautioned that federal courts are not to be used as a forum for concerned citizens to challenge the generally applicable policies enacted by the political branches of government. *See, e.g.*, *TransUnion LLC*, 141 S. Ct. at 2203 ("Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities."); *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2008) ("[T]his Court is not responsible for vindicating generalized partisan preferences.").

**B.    Plaintiffs' claimed injuries are not fairly traceable to CPM.**

Plaintiffs' alleged injuries are traceable to the City—i.e., "the independent action of [a] third party not before the court," *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999)—not CPM. Everything Plaintiffs complain about—meter fees, insufficient regulation of the meter system, "auto dependency"—is under City control. *See* CPM Mem. at 4-6 (citing the Concession and Illinois Municipal Code provisions giving the City control over rates, installation/removal of parking spaces, and general regulation of the public ways). Plaintiffs have no response to this but to exaggerate and mischaracterize the Concession, such as claiming that CPM is "effectively in total control" "with respect to rate setting." Opp'n at 9. That proposition finds no support in the Amended Complaint and contradicts the Concession and applicable law. Concession § 7.1; CPM Mem. at 10. The most that could plausibly be said is the Concession might

naturally factor into the City's decision-making, likewise true of so many factors that inevitably influence government policymaking. That does not change that CPM does not control the City's transportation structure, and thus that Plaintiffs have not pled traceability.

**C. Plaintiffs do not plead redressability.**

Plaintiffs do not explain how the relief they seek is likely to redress their alleged injuries. *See Lujan*, 504 U.S. at 561 ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."). The Opposition asserts that "restor[ing] the City's active regulation or supervision of the streets" and "removing a 75-year barrier to active regulation and to competition … will offer better terms for the City and consumers." Opp'n at 9. Plaintiffs work from the false premise that the City currently cannot actively regulate or supervise the streets. Even with that aside, they do not articulate why meter prices are likely to decrease or meters are likely to disappear, while bike lanes and pedestrian walkways proliferate, if the Concession were prematurely terminated or opened to additional bidders. The only known data point on the question of bidding is that CPM is party to the Concession because it offered the City *more than anyone else* during the competitive bidding process that occurred. *See* CPM Mem. at 3-4.

Plaintiffs' claim of redressability is also guesswork as to how the future might unfold and how unidentified third parties might act. However, Article III standing cannot rest on "guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 414. Courts repeatedly reject such speculative standing theories. *See, e.g.*, *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1444 (2011); *Area Transp. v. Ettinger*, 219 F.3d 671, 673-74 (7th Cir. 2000); *Ass'n of Am. Physicians & Surgeons v. Koskinen*, No. 13-C-1214, 2014 WL 1056495, at *7-8 (E.D. Wis. Mar. 18, 2014). The Opposition fails to address or distinguish any of these cases, and thus Plaintiffs' claims should be dismissed for the same reason.

## II.    Plaintiffs Have Not Alleged an Antitrust Injury

Plaintiffs' claim that they suffered antitrust injury because they could not use "substitutes" to meter parking, such as bikes and public transit, as frequently as they would like, Opp'n at 11, fails because their alleged product market does not include those substitutes.  Plaintiffs may not allege an antirust injury that is not in the market allegedly monopolized or subject to unfair competition.  *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 363 (S.D.N.Y. 2016).  Plaintiffs' arguments that quality reductions or harm to innovation can constitute antitrust injury, Opp'n at 9-10, fail for the same reason: they have not alleged harm to quality or innovation in the market alleged.[3]  The only alleged harms to quality or innovation concern *other* transportation options.[4] Am. Compl. ¶¶ 43-45.  To be sure, Plaintiffs argue, without citation to the Amended Complaint or the Concession, that CPM has been "forcing" the City to raise parking rates, Opp'n at 10—which would fall within the alleged market.  That empty rhetoric does not trump the plain language of the Concession, which confirms that only the City has the power to set rates.  Concession § 7.1.

Plaintiffs' contention that CPM overlooks that the Concession restricts the availability of substitutes by keeping metered parking spots in place misses the mark for another reason: this so-called "restriction" is not a restriction; it simply offers more output than Plaintiffs prefer.[5]  Offering greater output is procompetitive and not an injury to competition.  *Chi. Prof'l Sports Ltd. P'Ship v. Nat'l Basketball Ass'n*, 961 F.2d 667, 673 (7th Cir. 1992) (a "'restraint' that in the end expands output serves the interests of consumers and should be applauded rather than condemned.").

---

[3] Plaintiffs' argument that CPM does not cite consumer cases is erroneous and irrelevant because the test is the same—whether market output fell or prices rose to consumers, neither of which Plaintiffs allege.

[4] If, on the other hand, the Court were to consider alternative transportation options, such as bike lanes, public transit, and garages, to be reasonable substitutes, that scuttles Plaintiffs' case because it means Plaintiffs have failed to adequately allege the product market.  CPM Mem. at 18-19.

[5] Plaintiffs also ignore that the City may grant additional concessions at its discretion.  CPM Mem. at 12.

Plaintiffs argue—without citing any authority—that "the transfer of a public monopoly to a private party" is illegal unless immune, Opp'n at 11, ignoring the direct authority CPM cited to the contrary.[6] These cases make clear that the antitrust laws are not concerned—and there is no antitrust injury—from the transfer of an alleged monopoly from one party to another.

## III. Plaintiffs' Sherman Act Claims Are Barred by the State Action Immunity Doctrine

Plaintiffs' label as "cursory," Opp'n at 12, CPM's invocation of state action immunity. CPM's argument is short because it is straightforward: public-private agreements are immune from antitrust challenge when made pursuant to "clearly articulated and affirmatively expressed [] state policy." *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980). Plaintiffs do not respond to the critical fact that "[t]he Illinois legislature has explicitly provided that municipalities may act in anticompetitive ways that do not comply with federal anti-trust laws" under 65 ILCS 5/1-1-10. *Lathrop v. Juneau & Assocs.*, 220 F.R.D. 330, 336 (S.D. Ill. 2004). Also, the Illinois Municipal Code authorizes municipalities to "own, . . . manage, control, . . . maintain and operate . . . parking meters" and to "[e]nter into contracts dealing *in any manner* with" those functions. 65 ILCS 5/11-71-1. The statute does not limit municipalities to contracts for the "leasing of rights for advertising purposes" as Plaintiffs erroneously claim, Opp'n at 13. The "clearly articulated and affirmatively expressed" state policy requirement, *Midcal*, 445 U.S. at 105, is therefore easily met.

Plaintiffs are wrong that CPM must additionally demonstrate "active supervision" by the City. Opp'n at 13. For municipal-private party contracts, "[o]nce it is determined that the

---

[6] *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 129 F. Supp. 3d 614, 636 (N.D. Ill. 2015) ("Absent an allegation that [the challenged] agreements . . . somehow decreased competition, the mere transfer of a monopoly is not an antitrust injury"); *JetAway Aviation, LLC v. Bd. of Cty. Com'rs of Cty. Of Montrose, Colo.*, 754 F.3d 824, 839 (10th Cir. 2014) (Holmes, J., concurring) ("And there can be no anticompetitive conduct—that is, harm to competition—in situations where the sole act in question is the replacement of one monopolist by another").

municipality is protected by the state action doctrine, a private party who is merely the beneficiary of the municipality's exercise of power should also be protected" without active state supervision. *City Commc'ns, Inc. v. Detroit*, 660 F. Supp. 932, 934 (E.D. Mich. 1987). To hold otherwise "would allow plaintiffs to circumvent the state action doctrine and challenge protected municipal decisions through artful pleading." *Bloom v. Hennepin Cty.*, 783 F. Supp. 418, 427 (D. Minn. 1992). Since the doctrine would immunize the City from Plaintiffs' Sherman Act challenge, it also immunizes CPM. *See Zimomra v. Alamo Rent-A-Car*, 111 F.3d 1495, 1500 (10th Cir. 1997) (concluding that "when the same conduct is at issue," it "would be illogical" to hold that a municipality is entitled to state action immunity, but the private party is not).

Even if the active supervision requirement were applicable, it is satisfied because CPM's "discretionary authority in connection with the [allegedly] anticompetitive acts (e.g., to determine price or rate structures)," *id.*, is "completely circumscribed" by the Concession. *Alarm Detection Sys., Inc.*, 326 F. Supp. 3d at 620. CPM has no power to set meter rates or even the hours of meter operation, nor the power to designate or remove meters, which are within the City's exclusive control. *See* Concession §§ 2.1, 3.1(a), 3.2(e), 7.1, 7.7(a). CPM is also subject to regular reporting to the City and auditing. *Id*. § 8. Accordingly, active supervision, if applicable, is easily satisfied.

## IV. Plaintiffs Fail to Plead Required Elements of Sherman Act Claims

Plaintiffs ignore the well-established case law that monopoly power under § 2 requires control of price. The Concession provides that price and output are controlled by the City, not CPM, yet Plaintiffs do not respond to CPM's authority, *Humboldt Bay Mun. Water Dist.*, 608 F. Supp. at 568, holding that there can be no monopoly power when the government sets prices.

Further, Plaintiffs have no response to CPM's argument that, even if CPM has monopoly power—which Plaintiffs have not pled—it did not acquire or maintain it in an anticompetitive manner. Plaintiffs cite no authority contradicting or distinguishing the lengthy list of cases

showing that the mere transfer of a monopoly does not constitute an antitrust violation. CPM Mem. at 17. Plaintiffs instead claim that transferring a monopoly from a public party to a private party means that *Parker* immunity does not apply. That argument—which is unsupported and wrong, in all events—has nothing to do with whether the transfer violates the Sherman Act.

Plaintiffs similarly fail to carry their burden under § 1 to allege that the challenged conduct has an anticompetitive effect that harms consumers. Plaintiffs repeatedly cite the Concession's 75-year term and claim the term must be shorter than 75 years to be legal, but they do not offer any cases contradicting *E&L Consulting, Ltd. v. Doman Indust. Ltd.*, 472 F.3d 23, 29-30 (2d Cir. 2006) and similar cases holding that merely shifting market power from one entity to another has no anticompetitive effect and is not an unreasonable restraint of trade.

Nor can Plaintiffs resuscitate their § 1 and § 2 claims with pages of market-definition arguments unsupported by the Amended Complaint. Plaintiffs admit that there are many substitutes to City parking meters, including those mentioned in the Amended Complaint like bikes, public transit, and ride sharing, and those unmentioned in the Amended Complaint, like "garage or off-street parking." Opp'n at 16. Even with these admissions, the Amended Complaint lacks sufficient explanation as to why these admitted substitutes are not part of the relevant market. CPM Mem. at 19.[7] Indeed, more than two pages in the Opposition are devoted to explaining— without citation or support—why the admitted substitutes are not reasonable substitutes, Opp'n at 16-17, despite arguing elsewhere that these substitutes are just that and that consumers want them, *id.* at 11. And in fact, according to U.S. Census Bureau, 26.9% of households in Chicago do not

---

[7] *E.g.*, *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 172 (S.D.N.Y. 1995) (plaintiffs did not provide "an explanation for . . . defining the relevant product market in such narrow terms.").

even have access to a vehicle.[8]  Plaintiffs seek to paper over this contradiction by arguing that certain trips require a car despite alternatives, but Plaintiffs misstate how to determine a market under the Horizontal Merger Guidelines.  The definition of the market does not depend on whether a small number of customers must use the product, but whether there are insufficient customers who would switch away from the product in response to a price increase to make a price increase unprofitable.  *See F.T.C. v. Thomas Jefferson Univ.*, 505 F. Supp. 3d 522, 541 (E.D. Pa. 2020).[9] Even if some customers must use cars, many others have substitutes and Plaintiffs only argue that *some* customers must sometimes use parking meters.

Similarly, Plaintiffs do not even attempt to dispute or justify that the Amended Complaint provides no explanation for why the geographic market should not be defined more broadly to include, for example, parking in adjacent non-commercial areas.

## V.  Plaintiffs Fail to Plead Required Elements of an ICFA Claim

The Opposition insists the Amended Complaint makes out an ICFA violation based on framing the Concession as an alleged "unfair trade practice," Opp'n at 17, but Plaintiffs do not come close to pleading the *Robinson* factors.  ***First***, as covered previously, far from offending public policy, the Concession finds express *endorsement* in Illinois state law, codified in 65 ILCS 5/11-71-1 (authorizing the City to make contracts relating to the parking meter system) and 65 ILCS 5/1-1-10 (permitting exercise of powers within the chapter "notwithstanding effects on

---

[8] *See*
https://data.census.gov/cedsci/table?tid=ACSDP5Y2019.DP04&g=0400000US17_1600000US1714000&
hidePreview=true.

[9] *F.T.C. v. Whole Foods Market, Inc.*, 548 F.3d 1028, 1062 (D.C. Cir.) (Kavanaugh, J., dissenting) ("For a business to exert market power . . . it must be able to increase prices . . . while retaining enough customers to make that price increase profitable . . . If too many 'marginal' customers are turned off by a price hike, then the hike will be unprofitable even if a large group of die-hard 'core' customers remain active clients.").

competition.").[10]  Plaintiffs' reading of 65 ILCS 5/11-71-1 to prohibit the Concession is contrary

to its text, and the Illinois Court of Appeals rejected Plaintiffs' attorneys' prior challenge to the

legality of the Concession in *Ahmad*, 2014 IL App (1st) 123629, ¶¶ 40-42, 13 N.E.3d 251, 259-

60, which Plaintiffs ignore.  Plaintiffs' vague claims of lost revenues to the City, Opp'n at 18, also

ignore that CPM paid the City more than $1 billion for the Concession following an open bidding

process.  They do not identify any "public policy established by statutes and the common law" that

CPM violated.  *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014).

**Second**, Plaintiffs live in a large city featuring myriad options for travel that do not involve

meter payments, including buses, taxis, ride share, the L, parking garages, and more.  As noted

above, more than one-fourth of Chicago households do not even own a car.  Plaintiffs cannot

plausibly contend they are left "with little alternative except to submit to" the Concession, and thus

they cannot demonstrate immorality or oppression.  *Robinson v. Toyota Motor Credit Corp.*, 201

Ill. 2d 403, 418, 775 N.E.2d 951, 961 (2002); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 936 (7th Cir.

2010).[11]  Plaintiffs do not attempt to distinguish *Medina*, 2014 WL 1715517, at *7, where the court

held the plaintiffs similarly did not plead an unfairness claim because they were not coerced into

purchasing the product and had alternatives to using it.  Plaintiffs also cite no authority to support

that CPM's alleged profits from meters are relevant to that analysis, Opp'n at 18-19, whereas

*Robinson* says that "charging an unconscionably high price generally is insufficient to establish a

---

[10] Plaintiffs allege the Concession violates Illinois antitrust law.  Opp'n at 18.  Yet, Illinois follows federal guidance with respect to the type of arrangements that constitute antitrust violations, *e.g.*, *Gilbert's Ethan Allen Gallery v. Ethan Allen, Inc.*, 204 Ill. Dec. 769, 771-72, 642 N.E.2d 470, 472-73 (1994), and Plaintiffs have not pled a violation of federal antitrust laws for all of the reasons previously stated.

[11] Bike lanes have expanded under the Concession.  CPM Mem. at 5 n.6, 10.  The fact that, according to Plaintiffs, a single bike route supposedly was not installed, Opp'n at 7, 11, does not alter the analysis.

claim for unfairness." 201 Ill. 2d at 418, 775 N.E.2d at 961; *see also Siegel*, 612 F.3d at 935 (same); *Batson*, 746 F.3d at 833 (voluntarily paying "overcharge" not oppressive).

*Third*, Plaintiffs' claim that meter parking users will pay higher meter fees over time, Opp'n at 19, does not establish "substantial injury" as the mere voluntary selection and use of the service—chosen among other alternatives, with money exchanged for value received—does not amount to *any* injury, let alone a "substantial" one. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). The cases Plaintiffs cite are distinguishable and irrelevant, as the plaintiffs were subject to *unconsented* calls or faxes from which they incurred costs or injury against their will and received nothing in exchange. *Centerline Equipment Corporation v. Banner Personnel Service*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008) (plaintiffs incurred costs from being subject to unsolicited faxes); *Messina v. Green Tree Service, LLC*, 210 F. Supp. 3d 992, 1005 (N.D. Ill. 2016) (injury from unconsented calls); *G.M. Sign Inc. v. Stergo*, 681 F. Supp. 2d 929, 936 (N.D. Ill. 2009) (same, adding that the burden of unsolicited faxes was "in no way unreasonable").

For the same reasons, even if Plaintiffs had pled an unfair practice, they have not pled actual pecuniary loss, nor such loss resulting from that challenged practice. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151, 160 (2002). Plaintiffs do not dispute that when paying for parking at the meters, they do so knowingly and voluntarily, *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶¶ 22-23, 135 N.E.3d 73, 80 (2019), and that they get what they pay for. *Camasta*, 761 F.3d at 740; *Kim*, 598 F.3d at 365. Plaintiffs' claim "that they have paid CPM billions of dollars more than the 'actual value' of CPM's investment, and incalculably beyond the cost to maintain the meters," Opp'n at 20, is unmoored from anything pled in the Amended Complaint. Further, they do not and could not plausibly claim that, but for the

12

Concession, meter parking in Chicago would have been eliminated. Thus, they do not plead that their voluntary payment of meter fees is caused by the Concession, as opposed to the basic fact that there have long been and will remain parking meters in the City.

Plaintiffs try to waive away these points, claiming without explanation that "they have no alternative but to use CPM's meters," Opp'n at 21, and that CPM's cited authority concerns deception under the IFCA, rather than unfair practices. *Id*. at 20-21. But *McIntosh* did involve a claim of unfair practices and did not limit its holding to deception. 2019 IL 123626, ¶ 8, 135 N.E.3d 73, 78. There is, moreover, no reason why the rationale of *Camasta*, *Kim*, and other cases addressing pecuniary loss would apply to deception claims but not unfairness claims, when "actual damage" is a statutory requirement for any IFCA claim. *See* 815 ILCS 505/10a.

## VI. Plaintiffs' Claims Are Untimely and Should Be Dismissed Based on *Laches*

The Amended Complaint, on its face, paired with the undisputed facts, establishes that Plaintiffs' claims are untimely. Plaintiffs complain about an agreement from 2008, including a pricing term from that agreement that expired in 2013. The Opposition fails to justify Plaintiffs' delay and tries to distinguish cases cited by CPM on superficial grounds without engaging with the reasoning in those cases.

*First*, Plaintiffs' only purported justification for waiting 13 years to challenge a transaction consummated in 2008 is that there are still a number of years left in the Concession term. Opp'n at 22. They cite nothing to support that a party may wait years to pursue a claim based on a long-term contract where the grounds for that alleged claim were present from the outset. In contrast, CPM has provided multiple examples of cases where courts found delays of six or more years untimely. CPM Mem. at 23-24. And Plaintiffs' significant, unexplained delay alone, even without consideration of CPM's significant expenditures in relation to its performance under the Concession, suffices to create a presumption of prejudice. *Wilmes v. U.S. Postal Serv.*, 810 F.2d

130, 134 (7th Cir. 1987); *Cannon v. Univ. of Health Scis./The Chi. Med. Sch.*, 710 F.2d 351, 359 n.9 (7th Cir. 1983).

**Second**, Plaintiffs misapprehend the prejudice worked by their delay. Whether they seek damages does not impact the prejudice that their delay in suing imposes on CPM. CPM spent more than $1 billion to acquire the right to operate the City's on-street parking and thereafter additional sums to upgrade the parking meter payment system. *See* Concession §§ 3.16, 4.1, 4.7; *Ahmad*, 2014 IL App (1st) 123629, ¶ 10, 13 N.E.3d 251, 254. These expenditures "constitute sufficient prejudice as a matter of law." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 795 (7th Cir. 2002).

**Third**, Plaintiffs cannot point to any "overt acts" by CPM to justify a "continuing violation" theory. They argue, without citation, that consumers paying parking meter fees creates a continuing violation. Opp'n at 22, 24. But a continuing violation arises where "overt acts" *by the defendant* comprise a new violation, not when the effects of prior actions allegedly continue to cause harm. A relevant "overt act" is anticompetitive and serves to advance the anticompetitive goals of the defendant, such as meeting with competitors to fix prices, or continuing a predatory pricing scheme to squeeze competitors out of the market. *See, e.g., Alarm Detection Sys., Inc.*, 129 F. Supp. 3d at 633. A continuing violation does not arise from "natural unabated inertial consequence[s]." *Shuffle Tech Int'l, LLC v. Sci. Games Corp.*, No. 15 C 3702, 2015 WL 5934834, at *14 (N.D. Ill. Oct. 12, 2015). Cases holding that continued performance under a contract does not extend the limitations period, even if the contract is anticompetitive, echo this principle. *See, e.g., Alarm Detection Sys., Inc.*, 129 F. Supp. 3d at 632-34.

On that point, Plaintiffs seek to distinguish *Alarm Detection* without engaging with how the reasoning applies to their claims. CPM cited the case for the proposition that Plaintiffs

14

needlessly delayed in suing.  CPM Mem. at 23.  The case anticipated and addressed a continuing-violation argument by explaining how performance under an allegedly anticompetitive agreement with a municipality does not toll the limitations period.  *Alarm Detection Sys.*, 129 F. Supp. 3d at 641-42.  Plaintiffs claim that the opinion only dealt with damage claims under the Sherman Act, noting that the phrase "equitable claims" does not appear in the opinion.  Opp'n at 24 n.2.  The *Alarm Detection Sys.* plaintiff, however, *did* seek injunctive relief for their Sherman Act claims. Am. Verified Compl., *Alarm Detection Sys. v. Bloomingdale Fire Prot. Dist.*, No. 14-cv-876, 2014 WL 2177272, at ¶¶ 213, 230, 253, 266, 279 (N.D. Ill. May 16, 2014).  Regardless, Plaintiffs offer no rebuttal for the court's analysis that continued performance under a consummated agreement, without more, does not support a continuing violation.  *See Alarm Detection Sys.*, 129 F. Supp. 3d at 632-34.

Plaintiffs' attempt to distinguish CPM's authority on the basis that in some cases the plaintiffs who slept on their rights were competitors, rather than consumers, Opp'n at 23, is illogical.  They cite no authority holding that distinction matters under *laches* and ignore the cases cited by CPM from different contexts.[12]

For all these reason, Plaintiffs' facially untimely claims are barred by *laches*.

Dated: November 8, 2021        Respectfully submitted,

       By: /s/ Joseph L. Motto
       Dan K. Webb
       Robert Y. Sperling
       Joseph L. Motto
       Conor Reidy
       WINSTON & STRAWN LLP
       35 West Wacker Drive
       Chicago, Illinois 60601
       (312) 558-5600
       DWebb@winston.com

---

[12] *E.g.*, *New York v. Facebook*, No. CV 20-3589 (JEB), 2021 WL 2643724, at *22 (D.D.C. June 28, 2021); *Gov't of Puerto Rico v. Carpenter Co.*, 442 F. Supp. 3d 464, 474-75 (D.P.R. 2020).

RSperling@winston.com
JMotto@winston.com
CReidy@winston.com

*Attorneys for Chicago Parking Meters, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 8, 2021, I caused a true and correct copy of the foregoing to be filed via the CM/ECF system and served upon all counsel of record.

<u>/s/ Joseph L. Motto</u>